# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY LEE WILSON and<br>KEVIN J. McMULLIN,<br><br>Defendant. | No. CR07-4011-MWB<br><br>**REPORT AND RECOMMENDATION<br>ON PRETRIAL MOTIONS** |

_____

This matter is before the court on two motions filed by the defendant Kevin J. McMullin. On February 23, 2007, the defendants Timothy Lee Wilson and Kevin J. McMullin were charged in a four-count Indictment with conspiracy to manufacture and distribute methamphetamine, conspiracy to possess pseudoephedrine for the purpose of manufacturing methamphetamine, and possession of pseudoephedrine. (*See* Doc. No. 3) On August 1, 2007, McMullin filed a motion to dismiss the charges against him for untimely delay (Doc. No. 33), and a motion to dismiss Count Four of the Indictment on the basis that Counts Three and Four are duplicative, constituting a violation of his right against double jeopardy. (Doc. No. 35) The plaintiff (the "Government") resisted the motions on August 22, 2007. (Doc. Nos. 41 & 42).

Pursuant to the trial management order (Doc. No. 22), pretrial motions of this nature were referred to the undersigned for review and the filing of a recommended disposition. Accordingly, the court turns to consideration of McMullin's motions.

### *MOTION TO DISMISS DUE TO UNTIMELY DELAY*

The basic facts underlying this motion are undisputed. The drug-related conduct underlying the charges against McMullin occurred between January 19 and June 7, 2002.

The Indictment was handed down by the grand jury on February 23, 2007. In the interim, counsel for the Government had several discussions with law enforcement officers concerning when, if at all, a federal prosecution would be initiated against McMullin. McMullin cites reports in the Government's discovery file indicating those types of discussions took place on April 3, July 1, and November 12, 2003; and January 23, 2004. According to McMullin, each of those reports indicates the Assistant United States Attorney told officers the matter would be prosecuted, and he was in the process of preparing a cooperation plea agreement for McMullin's codefendant, Timothy Wilson. McMullin states the January 2004 report also indicates the Assistant United States Attorney was interested in contacting McMullin's attorney to discuss the possibility of pre-indictment cooperation by McMullin. (*See* Doc. No. 33-1, ¶¶ 3-6) McMullin alleges, and the court will accept as true for purposes of his motion, that no attorney had been appointed to represent him pre-indictment, and apparently no contact occurred between the Government and McMullin, or any attorney on his behalf, prior to the date of the Indictment.

McMullin claims he has been prejudiced as a result of the delay in bringing charges against him, because if charges had been brought close in time to the underlying events, McMullin "could have cooperated with the United States Attorney's Office and law enforcement for purposes of obtaining Section 3553(e) relief and USSG 5k.1 relief." (Doc. No. 33-1, ¶ 8; Doc. No. 33-2, p. 2) McMullin alleges the Government delayed the Indictment intentionally for purposes of attempting to obtain McMullin's cooperation "by having an attorney appointed for him" – something that never occurred. (Doc. No. 33-2, p. 3)

The United States Supreme Court has discussed at length the hurdles a defendant must surmount to prevail on a motion to dismiss for pre-indictment delay, as well as the reasons for avoiding a requirement that the Government move too hastily to prosecution

2

Case 5:07-cr-04011-MWB    Document 47    Filed 08/28/07    Page 2 of 11

of suspected criminals. The Court's discussion in *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), is pertinent to the present motion:

> [S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide "'the primary guarantee, against bringing overly stale criminal charges.'" [*United States v. Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 464, 30 L. Ed. 2d 468 (1971)], quoting *United States v. Ewell*, 383 U.S. 116, 122, 86 S. Ct. 773, 777, 15 L. Ed. 2d 627 (1966). But we did acknowledge that the "statute of limitations does not fully define [defendants'] rights with respect to the events occurring prior to indictment," 404 U.S. at 324, 92 S. Ct. at 465, and that the Due Process Clause has a limited role to play in protecting against oppressive delay.

*Lovasco*, 431 U.S. at 789, 97 S. Ct. at 2048. *Accord United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999) (quoting *Lovasco*).

The Court noted a due process claim becomes "concrete and ripe for adjudication" upon the defendant's showing of actual prejudice; however, "'[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delays; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.'" *Lovasco*, 431 U.S. at 789-90, 97 S. Ct. at 2034 (quoting *Marion*, 404 U.S. at 234-25, 92 S. Ct. at 465). *See also United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000) ("The court will inquire into the reasons for delay only where actual prejudice has been established."); *United States v. Singer*, 687 F.2d 1135, 1142-43 (8th Cir. 1982) (defendant must show delay resulted in "actual prejudice not outweighed by the reasons for the delay"). In particular, the Court observed:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their

3

> judicial function." *Rochin v. California*, 342 U.S. 165, 170, 72 S. Ct. 205, 209, 96 L. Ed. 183 (1952). Our task is more circumscribed. We are to determine only whether the action complained of – here, compelling respondent to stand trial after the Government delayed indictment to investigate further – violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791 (1935), and which define "the community's sense of fair play and decency. . . ." [Citations omitted.]

*Lovasco*, 431 U.S. at 790, 97 S. Ct. at 2049.

The Court held the interests of the defendant, the Government, the courts, and the public would not be served by compelling the Government to initiate a prosecution as soon as prosecutors have probable cause to believe an accused is guilty, or even once sufficient evidence has been developed to obtain a conviction. *Id.*, 431 U.S. at 790-95, 97 S. Ct. at 2049-51. The Court noted more information often is needed before a prosecutor can make a charging decision. *Id.*, 431 U.S. at 794, 97 S. Ct. at 2051. This is particularly true in a drug conspiracy case like the present one, where further investigation could show a defendant's specific role in the conspiracy, rather than simply the fact that he was involved. Similarly, further investigation could show a defendant's role was less significant than prosecutors at first believed. *See id.* The Court expressed a reluctance to adopt a rule that "would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases." *Id.*

The Eighth Circuit Court of Appeals also has considered when dismissal is warranted for pre-indictment delay:

> The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay. *United States v. Sturdy*, 207 F.3d 448, 451-52 (8th Cir. 2000). To establish unreasonable pre-indictment delay, a defendant must show that the delay resulted in actual and substantial prejudice to his defense, and that the government intentionally delayed the indictment to

4

> gain a tactical advantage or to harass him. *Id.* at 452. . . . If
> the defendant fails to establish actual prejudice, we need not
> assess the government's rationale for the delay. *Id.*

*United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002). The Eighth Circuit has noted "a defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir. 2006).

The statute of limitations for the offenses with which McMullin is charges is five years. *See* 18 U.S.C. § 3282. There is no question that the charges were brought against him within the applicable statute of limitations. Thus, to prevail on his motion, McMullin must carry the burden of proof on both elements; i.e., "that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. [Footnote omitted.]" *Jackson*, 446 U.S. at 849 (citing *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000); *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004); *Sprouts*, 282 F.3d at 1041).

McMullin has failed to carry his burden to prove either of these two elements. His "speculative or conclusory claims of possible prejudice as a result of the passage of time" cannot establish the type of actual prejudice necessary to warrant dismissal of the charges. *See United States v. Gladney*, 474 F.3d 1027, 1031 (8th Cir. 2007) (citing *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000)). Therefore, McMullin's motion to dismiss on the basis of pre-indictment delay should be denied.

### *MOTION TO DISMISS COUNT FOUR DUE TO DOUBLE JEOPARDY*

In this motion (Doc. No. 35), McMullin argues Counts 3 and 4 of the Indictment are duplicate charges, requiring proof of the same facts, and they therefore violate his Fifth Amendment right against double jeopardy.

Count 3 of the Indictment charges as follows:

> On or about June 6 through June 7, 2002, in the Northern District of Iowa, the defendants, TIMOTHY LEE WILSON and KEVIN J. McMULLIN, did knowingly and intentionally possess and aid and abet in the possession of pseudoephedrine, a List I chemical, with intent to manufacture methamphetamine, a Schedule II controlled substance.
> This was in violation of Title 21, United States Code, Section 841(c)(1), and Title 18, United States Code, Section 2.

(Doc. No. 3, p. 3)

Count 4 of the Indictment charges as follows:

> On or about June 6 through June 7, 2002, in the Northern District of Iowa, the defendants, TIMOTHY LEE WILSON and KEVIN J. McMULLIN, did knowingly and intentionally possess and aid and abet in the possession of pseudoephedrine, a List I chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, a Schedule II controlled substance.
>
> This was in violation of Title 21, United States Code, Section 841(c)(2), and Title 18, United States Code, Section 2.

(Doc. No. 3, pp. 3-4)

McMullin notes the question of whether charges under subsections 841(c)(1) and 841(c)(2) are duplicative appears to be a matter of first impression in any federal court. Indeed, the court has been unable to locate a case addressing the issue from any circuit, and the parties have cited no authorities comparing the two statutes. However, a substantial body of case law exists addressing the proper analysis the court should employ in considering a double jeopardy argument.

"The Double Jeopardy Clause 'protects against multiple punishments for the same offense.'" *United States v. Ervasti*, 201 F.3d 1029, 1039 (8th Cir. 2000) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969),

*overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)). "'In order to support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense.'" *Id.* (quoting *United States v. Bennett*, 44 F.3d 1364, 1368 (8th Cir. 1995)). Here, the court must determine whether the offenses set forth in subsections 841(c)(1) and 841(c)(2) are the same for purposes of double jeopardy.

As the Eighth Circuit Court of Appeals explained in *Ervasti*:

> Our starting point in determining whether [the charged offenses] are the "same offense" for double jeopardy purposes is the same elements analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which provides: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S. Ct. 180.

*Ervasti*, 201 F.3d at 1039.

The Supreme Court has summarized the *Blockburger* test as follows:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 168-169, 97 S. Ct. 2221, 2226-2227, 53 L. Ed. 2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932) (multiple punishment); *Gavieres v. United States*, 220 U.S. 338, 342, 31 S. Ct. 421, 422, 55 L. Ed. 489 (1911) (successive prosecutions). The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

7

*United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993). *See Lewis v. United States*, 523 U.S. 155, 177, 118 S. Ct. 1135, 1147, 140 L. Ed. 2d 271 (1998) (Scalia, J. and Thomas J., concurring) ("Two offenses are different, for double jeopardy purposes, whenever each contains an element that the other does not. . . . That test can be easily and mechanically applied, and has the virtue of producing consistent and predictable results.") (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182). *See also McIntyre v. Caspari*, 35 F.3d 338, 340 (8th Cir. 1994) ("[T]he Supreme Court has made clear that the *Blockburger* 'same-elements' test is the sole standard by which we must determine whether a subsequent prosecution violates the Double Jeopardy Clause." [Citations omitted.]).

Subsection 841(c)(1) requires proof of the following elements: (1) the defendant possessed a listed chemical; (2) possession of the chemical was knowing or intentional; and (3) the defendant intended to manufacture a controlled substance with the chemical. 21 U.S.C. § 841(c)(1). Subsection 841(c)(2) requires proof of the following elements: (1) the defendant possessed a listed chemical; (2) possession of the chemical was knowing or intentional; and (3) the defendant knew, or reasonably believed, that the chemical would be used to manufacture a controlled substance. 21 U.S.C. § 841(c)(2); *United States v. Beltz*, 385 F.3d 1158, 1162 (8th Cir. 2004). Thus, the two subsections share two common elements; i.e., possession of a listed chemical, and that the possession of the chemical was knowing or intentional.

Where the two subsections differ is in the intent element. Subsection (c)(1) requires proof that the defendant possessed the chemical with the "intent to manufacture" a controlled substance – methamphetamine, in this case. In other words, the defendant, himself, intended to manufacture a controlled substance with the listed chemical. Subsection (c)(2) requires proof that the defendant either knew, or reasonably believed, that the chemical would be used to manufacture a controlled substance. To satisfy the

8

Case 5:07-cr-04011-MWB   Document 47   Filed 08/28/07   Page 8 of 11

intent element of subsection (c)(2), the defendant could have known or believed the listed chemical would be used *by someone else* to manufacture a controlled substance.

Nevertheless, McMullin argues that "[e]very violation of 21 U.S.C. Section 841(c)(2) [sic] is also a violation of 21 U.S.C. Section 841(c)(2)." (Doc. No. 35-2, p. 3) He states, "There is no difference between possessing pseudoephedrine with intent to manufacture methamphetamine and possessing pseudoephedrine knowing that it will be used to manufacture methamphetamine." (Doc. No. 35-1, ¶ 7) While it may be true that a violation of subsection (c)(1) automatically would violate subsection (c)(2), the reverse is not true. Possessing a listed chemical with the knowledge or reasonable belief that it will be used to manufacture a controlled substance differs from possession with the intent to manufacture a controlled substance. In the former case, the act of manufacturing the controlled substance could be accomplished by someone other than the person who possesses the chemical, as in the case of someone who obtains pseudoephedrine pills and supplies them to another who uses the pills to manufacture methamphetamine.

However, because a violation of subsection 841(c)(1) *ipso facto* constitutes a violation of subsection 841(c)(2), the court finds possession of a listed chemical under subsection 841(c)(2) is a lesser included offense of possession of a listed chemical under subsection 841(c)(1). The two subsections differ only in that subsection (c)(1) requires that the defendant intended to manufacture the controlled substance himself, rather than simply knowing or reasonably believing the substance would be used to manufacture a controlled substance. *See generally United States v. Carpenter*, 422 F.3d 738, 747 (8th Cir. 2005) (finding offense of manufacturing methamphetamine to be lesser included offense of manufacturing within 1,000 feet of a school); *United States v. Johnson*, 417 F.3d 990, 998 (8th Cir. 2004) (finding offense of illegally tampering with an automobile by operation to be lesser included offense of automobile theft). Stated another way, in order to convict McMullin of violating subsection 841(c)(1), the jury must necessarily find that each

9

element of subsection 841(c)(2) has been established; McMullin could not possess pseudoephedrine with the intent to manufacture methamphetamine absent the knowledge that the pseudoephedrine he possessed was intended to be used in manufacturing methamphetamine.

This conclusion does not mandate dismissal of Count 4, however. The Government may introduce evidence at trial that the pseudoephedrine possession by McMullin on June 6-7, 2002, was purchased at two distinct times with two distinct intents – one purchase with the intent to use the pseudoephedrine to manufacture methamphetamine himself, and one purchase with the knowledge or belief that someone else was going to use the substance to manufacture methamphetamine. "While a defendant may be tried for lesser and greater offenses during the same trial, a judgment of conviction and punishment for both violates the double jeopardy clause." *Carpenter*, 422 F.3d at 747 (citing *United States v. Jelinek*, 57 F.3d 655, 660 (8th Cir. 1995)). Thus, the Government may introduce evidence supporting both Counts at trial, and it will be the trial court's decision whether or not to submit both Counts to the jury. Accordingly, McMullin's motion to dismiss Count Four should be denied at this stage of the proceedings, without prejudice to its renewal, if appropriate, at the close of the evidence at trial.

## *CONCLUSION*

For the reasons set forth above, IT IS RESPECTFULLY RECOMMENDED that McMullin's motion to dismiss due to pre-indictment delay, and his motion to dismiss Count Four on the basis of double jeopardy, be denied. Any party who objects to this Report and Recommendation must serve and file specific, written objections by

10

**September 5, 2007**. Any response to the objections must be served and filed by **September 10, 2007**.

**IT IS SO ORDERED.**

**DATED** this 28th day of August, 2007.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

11